**BD. OF ADJMT. OF THE TOWN OF SWANSBORO v. TOWN OF SWANSBORO**

[108 N.C. App. 198 (1992)]

Dearen" had one constituted a stipulation that neither of the other two defendants had a criminal record and supported that fact in mitigation); *see also State v. Canady*, 330 N.C. 398, 399-400, 410 S.E.2d 875, 877 (1991) (defendant's *silence* while the prosecuting attorney makes a statement does *not* support an inference that defendant consented to the statement).

In the instant case, in response to the prosecutor's statement at sentencing that defendant has prior convictions of loitering and resisting a public officer, defense counsel stated, "Judge, we'd object to the loitering. That doesn't carry sixty days." Such a response is unequivocal and is tantamount to an admission or stipulation that defendant has the prior convictions asserted by the State, and, accordingly, we reject this assignment of error.

We have reviewed defendant's remaining assignments of error, and have determined that they are either without merit or do not constitute prejudicial error entitling defendant to a new trial.

No error.

Judges WYNN and WALKER concur.

---

BOARD OF ADJUSTMENT OF THE TOWN OF SWANSBORO, IAN SMITH, MARY ELLEN YANICH, LELAND ZIEGLER, ALLEN E. GUIN, WESLEY STANLEY, AND RAYMOND C. FRENCH, JR. v. THE TOWN OF SWANSBORO, A MUNICIPAL CORPORATION, MATTHEW TEACHEY, JOHN D. LICKO, MARK J. ALEXANDER, AND VERNON TAYLOR (IN THEIR OFFICIAL CAPACITIES AS THE PURPORTED MEMBERS OF THE BOARD OF ADJUSTMENT OF THE TOWN OF SWANSBORO), JOAN DEATON, LESLIE W. EDMONDS, JR., GEORGE W. KIETZMAN, AND PAUL W. EDGERTON (IN THEIR OFFICIAL CAPACITIES AS THE BOARD OF COMMISSIONERS OF THE TOWN OF SWANSBORO), AND WILLIAM E. RUSSELL, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE TOWN OF SWANSBORO

No. 914SC846

(Filed 15 December 1992)

**1. Municipal Corporations § 6 (NCI3d) — Board of Adjustment — proposed change — public notice — sufficient**

The third notice of a public hearing concerning the abolition of the old Board of Adjustment for the Town of Swansboro

and the appointment of a new Board of Adjustment sufficiently apprised plaintiffs of the nature and character of the action proposed by defendants where neither of the first two notices referenced the creation of a new Board of Adjustment, but the final notice not only referenced the abolition of the old Board but delineated in detail the content of the section establishing the new Board. N.C.G.S. § 160A-364.

**Am Jur 2d, Municipal Corporations § 161.**

2. **Municipal Corporations § 6 (NCI3d) — Board of Adjustment — abolition of old Board and creation of new — effectively shortening terms — no error**

The abolition of the Board of Adjustment by the Town of Swansboro and the creation of a new Board did not violate N.C.G.S. § 160A-388(a) in that the terms of three members were effectively shortened. If a board of adjustment is created, then it must consist of at least five appointees who each have three year terms and such terms may not be reduced by the city council as long as the board of adjustment is in existence. However, the prohibition against the reduction of the length of the terms of the members of an existing board of adjustment does not diminish the authority of the city council to abolish the board. N.C.G.S. § 160A-388(a); N.C.G.S. § 160A-146.

**Am Jur 2d, Municipal Corporations § 239.**

3. **Municipal Corporations § 6 (NCI3d) — Board of Adjustment — abolition of old and creation of new — motives — immaterial**

Although plaintiffs contend that the abolition of the old Board of Adjustment and the creation of a new Board by the Board of Commissioners of the Town of Swansboro was arbitrary and capricious in that the sole motive for the action was the anger of the mayor over the refusal of the old Board to grant the mayor a special use permit, defendants are authorized by statute to abolish and create boards of adjustment and the reason for defendants' actions are immaterial. N.C.G.S. § 160A-146; N.C.G.S. § 160A-388(a),

**Am Jur 2d, Municipal Corporations § 239.**

4. **Municipal Corporations § 6 (NCI4th)— municipal ordinance — concurrent service prohibited — conflict with statute — invalid**

A provision of an ordinance of the Town of Swansboro prohibiting dual service as an elected official and a member of the Board of Adjustment or for one year after termination of service as an elected official is invalid because it makes unlawful an act expressly made lawful by N.C.G.S. § 128-1.1, which provides that any person who holds an elective office in State or local government is authorized to hold concurrently one other appointive office in either State or local government.

**Am Jur 2d, Municipal Corporations § 246.**

Judge LEWIS dissenting.

Appeal by plaintiffs from order filed 1 May 1991 in Onslow County Superior Court by Judge Gary E. Trawick. Heard in the Court of Appeals 16 September 1992.

*Jeffrey S. Miller for plaintiff-appellants.*

*Richard L. Stanley for defendant-appellees.*

GREENE, Judge.

Plaintiffs appeal from an order filed 1 May 1991, granting defendants' motion for summary judgment, N.C.G.S. § 1A-1, Rule 56 (1990).

The facts pertinent to this appeal establish that on 20 September 1985, the Board of Commissioners of the Town of Swansboro enacted Section 9-2-16 of its Code of Ordinances which provided for the appointment of a Board of Adjustment consisting of five residents of the town and two additional members from its extraterritorial jurisdiction. On 8 June 1989, plaintiffs Ian Smith (Smith) and Mary Ellen Yanich (Yanich) were appointed to the Swansboro Board of Adjustment for three-year terms. On 9 November 1989, plaintiff Leland Ziegler (Ziegler) was appointed to the Board of Adjustment for a three-year term.

On 14 December 1989, at a meeting of the Board of Commissioners, defendant Mayor William E. Russell (Russell) presented a proposed change to Section 9-2-16 regarding the appointments and terms of members of the Board of Adjustment. On 27 December

1989 and again on 3 January 1990, the Board of Commissioners published the following notice in a local newspaper:

PUBLIC HEARING NOTICE

The Board of Commissioners of the Town of Swansboro will hold a public hearing on Thursday January 11, 1990 at 6:30 p.m. to give parties of interest an opportunity to be heard on the proposed ordinance amendment regarding length of appointment terms, etc. for the Board of Adjustment.

Town Administrator

Plaintiffs Smith, Yanich, and Ziegler attended the public hearing, and, following a discussion, the Board of Commissioners voted to readvertise notice of the public hearing in order to inform the public that one of the purposes of the proposed amendment was to abolish the Board of Adjustment. On 17 January 1990 and again on 24 January 1990, the Board of Commissioners published the following notice:

PUBLIC HEARING
TOWN OF SWANSBORO

The Board of Commissioners of the Town of Swansboro will hold a public hearing on Thursday, January 25, 1990 at 7:00 p.m. to give parties of interest an opportunity to be heard on the change to the Town of Swansboro Zoning Ordinance, in respect to abolishing the Board of Adjustment. A copy of the proposed change is on file with the Town Clerk's Office. Additional amendments may be presented and changes made prior to adoption.

Town Administrator

At the conclusion of the 25 January 1990 public hearing, the Board of Commissioners adopted an amendment to Section 9-2-16 which abolishes the old Board of Adjustment and provides for the appointment of a new Board of Adjustment consisting of five resident members and two alternate resident members, and two members and one alternate member from the extraterritorial jurisdiction of the town. The amended ordinance also provides that "members of the Town governing body, Mayor and Commissioners are not eligible to serve on the [new] Board of Adjustment while serving on the governing body or for a period of one (1) year after service on the governing body is terminated." The appointments to the

new Board of Adjustment are for a term of three years, with the initial terms being staggered. Previous Board of Adjustment members who are eligible under the criteria established by the amendment may be considered for appointment to the new Board of Adjustment. Appointees to the new Board of Adjustment may serve no more than two consecutive three-year terms.

At the 8 February 1990 regular meeting of the Board of Commissioners, appointments were made to the new Board of Adjustment. None of the members of the old Board were appointed, and, in fact, plaintiffs Yanich and Ziegler, as former members of the city council, were ineligible for appointment to the new Board as a result of the changes effected by the amendment to Section 9-2-16. On 2 March 1990, plaintiffs filed an action against defendants claiming that the newly enacted ordinance was invalid and seeking injunctive and declaratory relief. Plaintiffs' complaint alleges in pertinent part that the abolition of the old Board of Adjustment and the effect of the new ordinance on plaintiffs' eligibility to serve on the new Board were prompted by defendant Russell's anger regarding the old Board's refusal to grant Russell a special use permit for property owned by Russell in downtown Swansboro.

On 21 and 28 March 1990, the Board of Commissioners readvertised notice of public hearing and held a public hearing on 3 April 1990 to once again consider the proposed amendment to Section 9-2-16. According to defendants, this was done because the old Board of Adjustment did not complete its business at its 12 February 1990 meeting and because "doubt existed as to the effective date of the Amendment." This third and final notice reads as follows:

STATE OF NORTH CAROLINA
NOTICE OF PUBLIC HEARING
COUNTY OF ONSLOW

The Board of Commissioners of the Town of Swansboro will hold a public hearing on April 3, 1990, at 7:00 p.m. in the Swansboro Town Hall to consider the following amendments to the Town of Swansboro Zoning Ordinance:

1. The proposed zoning amendment to Section 9-2-16 would abolish the Swansboro Board of Adjustment as it existed prior to January 25, 1990.

2. A new Section 9-2-16 to the Zoning Ordinance would be adopted which would provide for a new Board of Adjustment

consisting of seven members, five of which would be residents of the Town of Swansboro, and the remaining two members would reside outside the Town of Swansboro but within its zoning jurisdiction. Said amendment would further provide that members of the Town Board of Commissioners and the Mayor would not be eligible to serve during their term of office as an elected official of the Town of Swansboro or for a period of one year after their term of office had expired. Appointments to the Board of Adjustment would be for a period of three years but some of the initial appointments will be for a term of two years in order to provide for staggered terms.

3. The proposed amendment would repeal Section 9-2-16(a) of the Zoning Ordinance as it existed prior to January 25, 1990, and would repeal any attempted enactment of amendments to Section 9-2-16 on and after January 25, 1990.

A copy of the proposed amendment may be reviewed in the office of the Town Clerk.

This the 19th day of March, 1990.

Town of Swansboro
By: William Price
Town Administrator

Following the hearing, the Board of Commissioners adopted new Section 9-2-16 in the same form as that adopted at the conclusion of the 25 January 1990 public hearing, the amendment to become effective after 16 April 1990.

On 26 April 1990, the trial court heard and denied plaintiffs' motion for a preliminary injunction. On 20 August 1990, plaintiffs filed a motion for summary judgment, and on 30 August 1990, defendants did the same. On 1 May 1991, the trial court granted defendants' motion for summary judgment. Plaintiffs appeal.

---

The issues presented are whether (I) defendants' notice of public hearing regarding the proposed amendment to Section 9-2-16 sufficiently apprised those interested of the nature and character of the proposed action as a matter of law; (II) defendants' abolition of the old Board of Adjustment shortened the terms of plaintiffs Smith, Yanich, and Ziegler in violation of N.C.G.S. § 160A-388(a); (III) defendants' motive for abolishing the old Board and contem-

poraneously creating a new Board is relevant to the issue of the validity of defendants' actions; and (IV) the amendment to Section 9-2-16 impermissibly restricts dual service as an elected and appointed official in violation of N.C.G.S. § 128-1.1.

I

[1]  Plaintiffs argue that the content of defendants' notice of public hearing to discuss the proposed changes to Section 9-2-16 was insufficient as a matter of law. Specifically, plaintiffs argue that the notice failed to apprise those interested of the proposed establishment of the new Board of Adjustment.

North Carolina Gen. Stat. § 160A-364 provides that, "before adopting or amending any ordinance, . . . the city council shall hold a public hearing on it." N.C.G.S. § 160A-364 (1987). Notice of the public hearing must be published in an area newspaper once a week for two consecutive weeks, the first notice being published not less than ten days nor more than twenty-five days before the date fixed for the hearing. *Id.* To be adequate, the notice required under Section 160A-364 "must fairly and sufficiently apprise those whose rights may be affected of the nature and character of the action proposed." *Sellers v. City of Asheville*, 33 N.C. App. 544, 549, 236 S.E.2d 283, 286 (1977). Not only must notice of a zoning ordinance or amendment "adequately inform as to what changes are proposed, [but] the actual change must conform substantially to the proposed changes in the notice." 8A Eugene McQuillan, *The Law of Municipal Corporations* § 25.249 (3d ed. 1986); *accord Heaton v. City of Charlotte*, 277 N.C. 506, 518, 178 S.E.2d 352, 359 (1971).

That defendants complied with the frequency and time requirements of Section 160A-364 is undisputed. The record indicates that after publication of the first notice, which referenced a "proposed ordinance amendment regarding length of appointment terms, etc. for the Board of Adjustment," and the first hearing, defendants republished notice of a hearing to discuss "changes to the Swansboro Zoning Ordinance in respect to abolishing the Board of Adjustment," after which a second hearing was held and the amendment creating the new Board of Adjustment adopted. We agree with plaintiffs that, at this point, defendants had not complied with the notice requirement of Section 160A-364 because neither of the first two notices referenced the creation of a new Board of Adjustment, and thus failed to sufficiently apprise those interested of

the nature and character of defendants' proposed action. However, on 21 and 28 March 1990, defendants once again published notice of public hearing and held a third public hearing on the same issues. The final notice not only referenced the abolition of the old Board, but also delineated in detail the content of new Section 9-2-16, establishing the new Board of Adjustment. We hold that the third notice, which was published prior to the final public hearing on the matter and prior to the reenactment of the amendment to Section 9-2-16 and its effective date, sufficiently apprised plaintiffs of the nature and character of the action proposed by defendants.

## II

[2] Plaintiffs argue that defendants' abolition of the old Board of Adjustment shortened the three-year terms of Smith, Yanich, and Ziegler in violation of N.C.G.S. § 160A-388(a), which, according to plaintiffs, mandates that all Board of Adjustment members serve for three years.

North Carolina Gen. Stat. § 160A-388(a) provides in pertinent part that "[t]he city council *may* provide for the appointment and compensation of a board of adjustment consisting of five or more members, each to be appointed for three years." N.C.G.S. § 160A-388(a) (Supp. 1991) (emphasis added). Section 160A-146 grants to the city council the authority to "*create*, change, *abolish*, and consolidate offices, positions, departments, *boards*, commissions, and agencies of the city government," except that the council may not abolish any office, position, department, board, commission, or agency established and required by law. N.C.G.S. § 160A-146 (1987) (emphasis added). The establishment of a board of adjustment is not required by law. *See* N.C.G.S. § 160A-388(a) (Supp. 1991) (city council *may* provide for a board of adjustment).

Section 160A-388(a) expressly provides that the establishment of a board of adjustment is within the city council's discretion, and that <u>if</u> such a board is created, it must consist of five or more members each having three-year terms. Section 160A-146 empowers the city council to create *and abolish* boards. The fact that defendants' action had the effect of shortening the terms of some of the old Board members is not dispositive. This is so because the teaching of Section 160A-146 and Section 160A-388(a), when read together to give effect to each, *see Jackson v. Guilford County Bd. of Adjustment*, 275 N.C. 155, 166 S.E.2d 78 (1969) (statutes dealing with same subject matter must be construed *in pari materia*

and harmonized, if possible, to give effect to each), is as follows: *If* a board of adjustment is created, then it must consist of at least five appointees, each with three-year terms. Such terms may not be reduced by the city council as long as the board of adjustment is in existence. However, the prohibition against the reduction of the length of the terms of the members of an existing board of adjustment does not diminish the authority of the city council to abolish the board.

### III

**[3]**  Plaintiffs contend that the sole motive for the abolition of the old Board and contemporaneous creation of a new one was defendant Russell's anger regarding the old Board of Adjustment's refusal to grant Russell a special use permit, a matter which was later resolved through litigation in Russell's favor, and that therefore the action of the Board of Commissioners was arbitrary and capricious.

It is well-established that a court may not inquire into the motives of the city council in enacting an ordinance which is valid on its face. *Clark's Greenville, Inc. v. West*, 268 N.C. 527, 530, 151 S.E.2d 5, 7-8 (1966); *S.S. Kresge Co. v. Tomlinson*, 275 N.C. 1, 13, 165 S.E.2d 236, 243 (1969). In the instant case, the enactment of the amendment to Section 9-2-16, abolishing the old and creating a new Board of Adjustment, is valid because defendants are authorized by statute to abolish and to create boards of adjustment. *See* N.C.G.S. § 160A-146 (1987); N.C.G.S. § 160A-388(a) (Supp. 1991). Thus, the reasons for defendants' actions are immaterial.

### IV

**[4]**  Plaintiffs argue that the amendment to Section 9-2-16 conflicts with N.C.G.S. § 128-1.1, and is therefore invalid. Section 9-2-16 in part prohibits concurrent service by members of the town governing body, the mayor, or the commissioners on the new Board of Adjustment or for one year after termination of service on the governing body. North Carolina Gen. Stat. § 128-1.1 provides that any person who holds an elective office in State or local government is authorized to hold concurrently one other appointive office in either State or local government. N.C.G.S. § 128-1.1(b) (1991). Plaintiffs contend that such conflict is prohibited under N.C.G.S. § 160A-174, which provides in pertinent part that a city ordinance shall be consistent with the laws of North Carolina, and is inconsist-

ent when "the ordinance makes unlawful an act, omission, or condition which is expressly made lawful by State or federal law." N.C.G.S. § 160A-174(b) (1987).

The dispositive question is whether the provision in Section 9-2-16 prohibiting concurrent service as an elected town official and as a member of the Board of Adjustment, an appointed position, conflicts with Section 128-1.1. We hold that it does. The prohibition in the Swansboro ordinance makes unlawful an act which is expressly made lawful by Section 128-1.1. Therefore, that portion of Section 9-2-16 prohibiting dual service as an elected official and as a member of the Board of Adjustment or for one year after termination of service as an elected official is invalid. However, because the invalid provision is separable from the remaining provisions of new Section 9-2-16, in all other respects the ordinance is enforceable. See *Jackson*, 275 N.C. at 167-68, 166 S.E.2d at 87 (if valid and invalid provisions of an ordinance are separable, valid portions will be given full effect). The trial court properly granted summary judgment for defendants.

Affirmed.

Judge WYNN concurs.

Judge LEWIS dissents with separate opinion.

Judge LEWIS dissenting.

I respectfully dissent from the majority's interpretation of N.C.G.S. §§ 160A-146 and 160A-388. These statutes cannot be harmonized as the majority asserts unless the three-year term found in § 160A-388(a) is given effect. The general rule is "[w]here . . . one statute deals with a particular situation in detail, while another statute deals with it in general and comprehensive terms, the particular statute will be construed as controlling absent a clear legislative intent to the contrary." *Merritt v. Edwards Ridge*, 323 N.C. 330, 337, 372 S.E.2d 559 (1988) (citation omitted); *Doyle v. Southeastern Glass Laminates, Inc.*, 104 N.C. App. 326, 332, 409 S.E.2d 732 (1991), *rev'd on other grounds*, 331 N.C. 748, 417 S.E.2d 236 (1992). Because there is no clear legislative intent to the contrary in the case at hand, the specific statute, § 160A-388(a), must control.

Section 160A-146 broadly confers upon a city council the power to "create, change, abolish, and consolidate offices, positions, departments, boards, commissions, and agencies of the city government and generally organize and reorganize the city government in order to promote orderly and efficient administration of city affairs. . . ." N.C.G.S. § 160A-146 (1987). Section 160A-388(a), however, specifically deals with the creation of a board of adjustment, stating that "[t]he city council may provide for the appointment and compensation of a board of adjustment consisting of five or more members, *each to be appointed for three years*." N.C.G.S. § 160A-388(a) (Supp. 1992) (emphasis added). Although it is not required to do so, if a town chooses to create a Board of Adjustment, § 160A-388(a) mandates that the members be appointed to serve three-year terms. Fixed terms ensure that members will be able to act impartially, and will not be subject to unwarranted political pressure or be dissuaded from making unpopular decisions for fear that they will be replaced. Because § 160A-388(a) specifically addresses the various aspects of a Board of Adjustment, its provisions should prevail over the more general provisions of § 160A-146.

Section 160A-146 does give a city council the right to create and abolish, among other things, boards created by the council. The city council was not required to create the Board of Adjustment and certainly had the power to abolish it altogether. However, abolishing the Board and then immediately recreating it with different members goes beyond the scope of this statute. The majority's interpretation of the statutes allowing such actions permits a city council to replace members of a board at will. The Board's supposed independence is nullified and the members reduced to no more than the puppets of the mayor and town board. Had the legislature wanted such a situation it would have made the appointments "at will" instead of "for three years." The defendants have been permitted to circumvent the requirements of § 160A-388(a) for obvious political purposes.

As the majority points out, § 160A-146 excludes offices and other entities from its provisions if they are "required by law." § 160A-146. Since the creation of a board of adjustment is permissive, and therefore not required by law, such a board is subject to § 160A-146 and may be abolished. However, it does not follow that a town may abolish a board with the intention of simultaneous-

ly recreating it in order to alter its membership and eviscerate its independence.

Indeed, the United States Constitution states that "[t]he judicial power of the United States shall be vested in one supreme court, and in such inferior courts as the congress *may* from time to time ordain and establish." U.S. Const. art. III, § 1 (emphasis added). All federal judges serve terms on "good behavior" under this provision. Obviously, the creation of the federal court system, other than the supreme court, was permissive. Can it be said, then, if the Federal Article III judiciary did not toe the congressional line, that congress could abolish these judgeships and immediately recreate them with all new and compliant judges, paying them and their successors as well so as not to reduce their pay while in office?

Defendants could have achieved their goal of amending the ordinance and implementing its provisions without violating the provisions of § 160A-388(a). The possibilities are many for fair resolution, but under this scenario, the public would have to opine, like Marcellus in *Hamlet*, that "[s]omething is rotten in the state of Denmark." William Shakespeare, *Hamlet, Prince of Denmark* act 1, sc. 4.

I agree with the majority that ordinance § 9-2-16 cannot override N.C.G.S. § 128-1.1.

I would reverse the decision of the trial court, and therefore I respectfully dissent.